When you're ready, Mr. Driscoll. Good morning. May it please the Court. The District Court's decision granting defendants' motion that claims 1 and 12 were anticipated was based upon a misappreciation of the facts. The District Court wrongly found that the plaintiff's expert, Mr. Corcoran, conceded that all elements of claims 1 and 12 were found in the prior art devices. To the contrary, in the section of the testimony cited by the Court, there's an exchange between Mr. Corcoran and opposing counsel in which the differences between the claims and the prior art devices were listed. I have no explanation for the Court's finding in this regard. It's noteworthy that in defendants' reply brief, they did not contest our assertion in this regard. There is more than substantial evidence to support the jury's verdict that the claims were not invalid. Isn't it your job to take us through the two references that were relied upon by the District Court first, and point out that there is some limitation in the claim missing in each of those two devices, and then to take the two devices, the two devices that were not referred to, but that were in suit, and do the same thing? Certainly, Your Honor. There's the two devices. Isn't that what the case is all about? Because if you can make a showing that there's a limitation in the claim missing in each of these four pieces of prior art, then you can't have anticipation. That's correct, Your Honor. What is missing? There are several elements missing, Your Honor. In connection with the Nova device and the Fujitsu drive bay module, both of those are lacking a case configured to fit into a drive bay module. I'm sorry, a case configured to mount within a drive bay slot. They're also not configured so that cooling air is exhausted out of the second opening to cool the drive bay region. They're fundamentally different in the way they operate. The claimed invention is a device, a cooling device, that cools the drive bay region and the drives in that area, while the Fujitsu and the Nova device are self-contained units with their own dedicated cooling system. Cooling air comes in the front. It's your position that they're exhausting out the back end of the structure that they're sitting in, right? That's correct. So they're not exhausting into the drive bay region? Well, that's correct. They're called a rack mount system so that they draw air in through the front and they exhaust the air out through the back of the rack. The drive bay for those devices is inside the case. And there we have a very interesting issue where it's not consistent with the Markman order. The Markman order makes clear that the case is configured to go into the drive bay slot. The drive bay slot is a relatively narrow opening in the housing of a computer leading to the drive bay. So we have a case in which the – so the situation is that the case goes into the slot which leads to the drive bay. But in this situation with the Fujitsu and the Nova devices, the drive bay is in the case. It's inside out. It's not consistent with the Markman order. In connection with the other two devices, the PCC-2000, which is just an extractor fan, it's – again, it does not have a case configured to mount within a drive bay slot. It does not have a second opening to exhaust into the drive bay region. Well, is that because you're saying a rack, a computer rack, just doesn't have these slots? Well, that's not true. A rack may have slots. For example. I thought you could slide the PCC-2000 into a rack and it's got little places not to just slide it in. It sits there. Well, no, that particular fan is attached to the back. In fact, this fan came from – it didn't come off a computer system. It came off of a rack drive system, and it attaches to the back. It's a plate that extracts hot air from the back. It doesn't fit into a drive bay slot. And I think it's interesting. You mentioned before that – That's the PCC-2000 you're talking about? That's correct. Okay, got it. And I might as well round off this discussion before moving to my next point, that in connection with the AS400, the AS400 is a computer. Now, it does have a drive bay, but there's a housing that seals off the drive bay. There is no drive bay slot. The second opening, I thought, was the issue there. Well, there are several issues. In all of these devices, they lack the case configured to fit into a drive bay slot, and they also lack a second opening. And they also don't cool the region, the drive bay region. But in particular with the IBM AS400, that's a computer in which there's no openings or no slots leading to the drive bay. In the housing. In the housing, correct, Your Honor. Because you view the housing to be the front of the machine, and the hole has to be in the front. Well, it doesn't have to be necessarily in the front, Your Honor. It could be on the side. But it has to be – there's a computer housing. I mean, it has to be on the outside. It has to be on the outside. The Markman order is clear. It's a relatively narrow opening in the housing, the computer housing, leading to the drive bay. And the AS400 doesn't have that. And also, as Mr. – Well, in the AS400, doesn't the air go ambient to ambient? That's correct. It also has a – it has conduits so that it draws the air in from ambient and exhausts it out the front. But it doesn't go through a drive bay slot. Again, it goes through a system of conduits. There is no – there's no way that you can take the AS400 module and insert it into the drive bay slot because there is no opening in there. And, in fact, there's a cage for – we believe it's for RF reduction that presents that from happening as well. So you couldn't even modify this thing to have the drive bay slot. So if you're successful in convincing us that each of these pieces of prior art lack at least one, if not two, or more of the claim elements, what do we do with obvious? Do we – obviousness? The district court didn't rule on obviousness, correct? That's correct, Your Honor. Do we vacate and remand it to the district court? I'm sure you wouldn't like that. That would be three bites at the apple. That's your second appeal. That's correct. That's correct, Your Honor. No, we would not like that. We'd likely see you again. We would like to get this case over with. And we believe there's no compelling case for obviousness, Your Honor, that fundamental to the obvious case was showing that there's a reason to modify these devices for installation into a drive bay slot. No reason was given. In the brief, in fact, the brief only mentions, in a very cursory way, with no citations to the record, and I'm referring to the reply brief, the defendant's brief, that one could adapt, one skilled New York could adapt this to fit into a drive bay slot. Your argument is that why would they want to? Because these things have their own cooling systems. There's no need to cool. That's correct, Your Honor. So there's no – your main argument is motivation to combine, right? That's correct, Your Honor. And I'd like to point out, as a procedural matter, too, they never gave a reason for that. On the other hand, our expert gave reasons why somebody would not be compelled to do that, why they wouldn't want to do it, why it would be a mistake to do that. And those reasons were, as you've just mentioned, that it would be – it has its own self-contained unit. You're essentially taking something that has its own air conditioning unit and eliminating that and creating this communal air conditioning system, which is perhaps a less expensive alternative in some respects, but certainly is a step down from what those modules are. One thing that I have a little trouble with is obviousness is a question of law. And so for us to look at it for the first time on appeal, not the end of the world. But given that you hinge your non-obviousness arguments on motivation to combine and motivation to combine the question of fact, which the district court has not yet ruled on, I get a little nervous on appeal about the idea that I'm going to decide that question of fact. Appellate fact-finding is not something that I would want to do. So tell me how I can overcome, if possible, that trepidation that I have. I can allay your concern by saying that the jury has already considered this issue. The jury has decided this fact. And it is that the ultimate decision of obviousness is – I'm only reviewing whether a JMO should have been granted, which is a purely legal issue. That's correct, Your Honor. You're looking at whether or not there was substantial evidence on the record to find that you could reach that legal conclusion. And I submit, Your Honor, that the record is absent of any argument on defense side in connection with the motivation. What happens if we conclude that your notice of appeal didn't get the issue? And your notice of appeal barely, you know, specifically addressed the 103 issue. So what would happen if we said, well, let's assume we reverse the J-mall and Validium anticipation? But we don't say a word about 103. What happens then? Is your adversary going to go right back to the district court judge and you're going to go back? What's going to happen? Is 103 just going to die? You have a jury verdict of non-obviousness. Well, Your Honor. No action by the district court. And we give you what you want. Your patent is not anticipated. Well, Your Honor, I believe we answered that it's not anticipated and not obvious, that it's not invalid, is what we're looking for. I understand that. I'm just – what are the consequences to you? I mean, if we say your patent was not proven obvious in this case, that doesn't protect you from some challenge down the line. A patent can always be challenged. I'm just trying to figure out what happens if we simply just – we just ignore the 103 issue here. Well, Your Honor, I think to avoid the issue in the third bite at the apple, that we did raise the issue in this appeal that the – What I was just saying, assume I disagreed with you. We have some case law on how firmly do you have to present an issue in your notice of appeal in order for us to have authority to pass on it. I believe your other side contending that you haven't satisfied that test. I'm not aware of that, Your Honor. As far as I know, that hasn't been raised. Maybe for us to decide. Well, Your Honor, I would say that the notice of appeal certainly put the defendant on notice that we were looking to reinstate the jury verdict. The jury verdict had both an anticipation aspect to it and an obviousness aspect to it. And the brief that we wrote, our blue brief, clearly covers both of those situations in depth. I'm not sure if that answers your question. I hope it does, though. The answer is that nobody knows. If we were to decide that we were just going to pass 103 on the grounds you didn't sufficiently raise it here, then maybe something happens in the district court, maybe it doesn't. They know. All right. Thank you. Let's hear from Mr. Andrus. Thank you, Your Honor. And may it please the court, in answer to the last question, I think there has to be some way of getting the obviousness issue reviewed. And so if this court feels bound to pass on it, it has to go back to the district court. The district court has to finally adjudicate it, and then maybe we're back up here a third time. Who knows? Why can't we say, reviewing the record, no reasonable jury could find this patent anything other than non-obvious? You absolutely could. That's what we could do, right? Right. Well, the jury did find it non-obvious. Oh, I'm sorry. I misheard you, Your Honor. I thought you asked, as a matter of law, obvious. And I agreed with that. Well, here the jury found the claims non-obvious. Yes. Right? And then you filed a motion to upset that. Correct. And the district court didn't reach it. Correct. And assume that the issue is in front of us, aren't we capable of reviewing the record that was before the jury? Yes. And stating, as a matter of law, no jury could have come to any other conclusion than the one they came to. I believe you have that right, Your Honor. It's a question of law. Okay. We do have before us anticipation, but how could we find that there's a relatively narrow drive bay slot, or that there's a computer, or that there's a housing, or that there's a drive bay at all? There seemed to be a wide variety. And then, of course, there's the second opening issue as well. There's about four or maybe five things that seem to be missing. Your Honor, at the first trial, on the first appeal, I was here arguing very vehemently that the Antec device, the faceplate that looks like just a miniaturized version of the PCC-2000, we argued very strenuously that that didn't have a case and that it didn't have a second opening. In the court below and all during the course of the trial, we took as law of the case this court's ruling that that Antec faceplate that just had three fans on it and slips into the slot, that that infringes the patent because it has a case, because it is in a drive bay slot. And the only difference between that device and the PCC-2000 is that the PCC-2000 fits in a rack-mounted device and that the Antec device fits in a standard PC drive slot. There is no substantive difference between the two. Now, if the court finds that under the definitions of the Markman ruling that there is no housing, for example, that the PCC slipped into, then anyone going to this whole question of motivation to combine, there's no motivation to combine references in this case because you're not combining anything. All you're doing is shrinking the PCC-2000 to fit into the drive slot of a PC as opposed to a rack-mounted device. There's absolutely no difference between the devices whatsoever. They solve the same problem. And, you know, as far as motivation to do this... That isn't... That's not anticipation. You're talking about anticipation. Right. So, as far as anticipation... I hear you to be conceding that there's no drive bay. Well, I don't agree with... And that there's no frame and that there's no housing. What was going... And that there's no second opening. It was a semantic debate between the plaintiff's expert and counsel at the trial where plaintiff's expert was saying, no, this doesn't fit into a computer. Why isn't it a computer? Well, because you could put anything in that and it's not a dedicated spot. Well, that's not really the point. The point is whether it is capable of having a drive in that area. And it clearly is. If you look at the two sled prior art devices that we showed, there were drives that were in them sometimes and drives that weren't. Fujitsu and Nova? Yes. You know, again, I think when the district court was going through the claim construction, the court and everyone around was thinking PCs and didn't see this fine distinction or some of these semantic arguments that could be made and saying, well, no, this isn't really a drive-based slot because there isn't a drive in it yet. Well, that same argument could have been made with respect to the Antec HD cooler where you can put a drive in it or not. But the problem is you're saying it as though you presented evidence upon which the jury could have found for you. The problem is they presented evidence to the contrary and that was the fact finding and anticipation is a question of fact and what prior art references disclose are a question of fact. And you had to overcome a burden to show there was no substantial evidence for any reasonable jury to have come to this conclusion. And the fact that you introduced contrary evidence may well mean that if I got to review this case to Nova, maybe I would, as a fact finder, go along with you. But that's not the standard the court had or the one that we have. Well, there's a difference between evidence which is argument and evidence which is a real tangible thing and the device itself. Saying that the device doesn't fit into a drive-based slot doesn't necessarily mean that it doesn't fit into a drive-based slot. And that essentially is what was going on at trial. Weren't these devices, for some reason I tend to remember that maybe at trial there had been actually a lot of physical devices brought in and shown to the jury? Yes. And so couldn't they look at them and decide whether they thought it met the limitation of, for example, having a second opening? Like most of these things it's kind of hard to find that second opening. If you take the PCC-2000 that has a faceplate and a fan and some leads coming off of it and you take the Antec device that was found to infringe, the first opening was the front, great. The second opening was the back of the fan. Second opening being within said drive-by region. And it was inside the drive-by region. So saying that the jury could look at that PCC-2000 and say, no, we don't think it has a second opening. Well, it has to have a second opening. It's the exact same thing than a smaller version that was found to have a second opening. So the back of the fan is an opening in the drive-by? It's to the drive-by region. And the fan flows in the drive-by region. It's not only the slot but the area outside of it, and it flows right in there. But I think Judge Moore has stated quite clearly that fact was already decided against you, was it not? Which one, on infringement or? As to whether that is a second opening, the back of the fan is a second opening. Well, the back of the Antec fan on the faceplate Antec cooler was a second opening. It was the only other opening there was. And that's what was argued by counsel in a trial, and the judge agreed, and this Court agreed. Are you talking about the PCC-2000? Yes. But I have here that our comper, how do you say it? Comapper. Comapper. Yes. All right, I was saying comaper, but okay, comapper. Our first decision in comapper said that it precluded a finding of a second opening because we expressly said two ends of one hole can't be two openings. And isn't that what you're trying to argue right now, PCC-2000 is? I'm sorry. Didn't our first comapper decision say two ends of one hole can't be two separate openings? I don't think so. I mean, it depends on what you call a hole. I mean, is it a long tube or is it? What our opinion said was Antec was arguing that the second opening must be more than the back side of the first opening. Right. I argued that. You were making that argument, and we agreed with that. But isn't that what you're arguing here? Aren't you judicially stopped from making a different argument? No, no. The Antec faceplate device was found to have a second opening. It was found to infringe. Maybe that's a mistake. Maybe that's a mistake. Well, we had to live with it because it was law of the case, Your Honor. Maybe you should have said, well, it doesn't infringe because, you know, it doesn't have a second opening. I mean, you asserted to this court, and we relied on that. We agreed with you. Well, I argued that very strenuously with respect to the HD cooler, and I was found to be incorrect. Well, I understand why you were making that argument the first time around. And with respect to the sleds, Your Honor, there's no other opening in the sleds. They are just a bottom rack with a faceplate and fans in front, and the fans blow cooling air through the device. And that's the same thing as the Nova and the AS400 and the PCC2000. I think comparing the PCC2000 and the HD cooler that was found to infringe, there's no dispute that they are just simply miniature versions of one another, and anyone looking at a PC back when this invention was concepted looked at that and said, we've got some heat buildup in here. I want to figure out a way to cool this off. There doesn't seem to be any better way to cool it off than just taking a miniaturized version of the PCC2000 and just plugging it right in, which is exactly what the Antec device that was found to infringe did. So with that, I think I have about four minutes left, and I'm going to reserve it unless there's something else. Reserving it for what purpose? Okay. Thank you, Mr. Andrus, Mr. Driscoll. You have two and a half minutes. Are there any other questions I can answer? Thank you, Mr. Driscoll. I think that concludes our arguments this morning. Thank you, Eric. All rise.